And will you call the next case, please? 312-0481. People of the State of Illinois. Kathleen Justin Pelosi v. Jacob Timmsen. Appellant Tom Corrales. Mr. Corrales. Good afternoon. May I please report, counsel. I'm Tom Corrales with the Office of the State Defender and I represent Mr. Timmsen. This is a direct appeal that follows a stipulated bench trial and sentencing proceeding which resulted in Mr. Timmsen being placed on conditional discharge for driving on a suspended license. Prior to trial, Mr. Timmsen filed a motion to suppress the evidence which was obtained as a result of a rather unique type of traffic stop. And it is the ruling on the suppression motion which forms the basis for this appeal. Now the stop took place a little past one in the morning on a four-lane U.S. highway that connects the western side of Hancock County to Keokuk, Iowa with the bridge over the Mississippi River in between. Timmsen was driving a pickup truck east into Illinois and just after he crossed the bridge in an eastbound lane, he saw a police checkpoint which the trial court called a so he decided he wasn't going to drive into the checkpoint. To avoid being subjected to a stop, he made a U-turn in the only place where there was a break in the concrete median which was also over a railroad track and got into the westbound lane and started heading back toward the bridge. One of the officers who was working the checkpoint saw a truck that was going west of the checkpoint that had not passed his location and the other officer, Deputy Duffy, who conducted the stop actually saw Mr. Timmsen make the U-turn and start heading back west. So Duffy conducted the stop, both officers were present and at the stop they learned that Mr. Timmsen's Iowa license was suspended. The motion to suppress attacked the stop based on the argument that a stop is not supported by reasonable, articulable suspicion where the only reason for the stop is the driver's act of diverting his path to avoid going through a safety checkpoint. However, Judge Gambrow denied the motion and that's where we're at with this issue. He found that it was enough to provide reasonable, articulable suspicion to see someone make that kind of a driving maneuver. Now I'd like to move quickly into the legal analysis that I think lies at the heart of the constitutional issue, but I'll first address quickly the state's proposal that there is an alternative basis for affirming without reaching the constitutional question. That has to do with the idea that the stop could be found valid on a lane usage violation only without even considering that the officers conducted the stop because Mr. Timmsen wouldn't come through the checkpoint. To the extent that this is an argument that you're considering, I would urge you to compare the grounds that the state is relying on, which was to travel left of the center of a roadway within 100 feet of a railroad crossing, to the grounds that was a non-traffic violation that were talked about in People v. Cole. Cole is the case I cite at page 4 of our reply brief. There is no legal basis for writing a lane usage ticket under the circumstances of our case, where the road was a divided four-lane highway. The provision applies to a two-lane road with a centerline. As Cole makes clear, a mistake of law by a traffic officer is different than a mistake of fact. Stops are not reasonable, even if an officer thinks something is a violation, but the conduct actually is not prohibited conduct. That's a mistake of law. So where driving left of the center of the road within 100 feet of a railroad crossing is limited to two-lane roadways, then even if Deputy Duffy thought the statute had been violated, his being wrong constitutes a violation of the Fourth Amendment. The federal case law that is detailed in that Cole decision does a really good job of expressing that distinction. With that, I'll move on to what is the heart of this case, and what I hope that I will have convinced your honors to look at in this case is how there is a significant balancing of interests that needs to be conducted when deciding the constitutional question of whether driving in a way that takes a detour around one of these roadside checkpoints, even if it's a conspicuous detour, that should not form the basis for a valid traffic stop. Now, it is possible for you to just review the half dozen or so cases from other states and try to determine where our Supreme Court would come down or where the United States Supreme Court would see this case going, but I'm going to focus on the two competing interests that are at play. One is that a driver may not want to be subjected to a no-suspicion based stop, even if it's one that is a short and sweet type. And this interest is no different than the right to either give or deny the police permission to see if you're violating some law in other contexts. And I get that argument, and of course it's a good argument, but didn't you already lose it when the Supreme Court said that roadblocks are okay? No, Your Honor. The checkpoint is not the focus of the attack. We have accepted the checkpoint as barely tolerable under the Constitution. It has passed muster, but it is a rare form of constitutionally approved stop that is based on no suspicion. We don't have a lot of indiscriminate suspicionless stops that are approved under the Fourth Amendment. So in that sense, it's barely tolerated. And in this case, you have a person, by definition, who has, the police have no suspicion, but they're going to stop him. And he decides, I don't want to be stopped where you have no suspicion. So what if instead of doing a U-turn, you roll through there and the officer points you, pull over there and you say, no thanks, officer, and drive right to it? Well, if the officer pursues that person, I mean, are you not allowed to not obey a command of an officer? A verbal command? It's got to be a lawful command. Well, if you obey it, and then they find incriminating evidence and it was an illegal command, then that is suppressed. But you can be stopped for not obeying even an unlawful command. You might not have to run the risk of being successfully prosecuted, but I think it's different to disregard an order, I want you to go over to the place where we check people closer, than not even coming into the stop. The officer has policies, and this is an important point. These stops are subject to a lot of internal and external checks on how they're arranged. And so that you can look later to see how well they're doing. And one of them is no discretion in the part of any officer. They have to follow guidelines. They can't just say, I don't like your haircut, so I'm going to pull you to the side. And so you have safeguards in place on these types of checkpoints because they're so tenuous in terms of the balance with the Fourth Amendment. One of those checks against these roadside checks is in that document that the Hawaii and Nebraska courts took so seriously, and that's the guidelines documents that's created by the National Traffic Safety Administration. Do you really think some pamphlet writer at the DOT gets to decide Fourth Amendment law? Well, I could just go back and point to the courts that have said, that's good law that's in that pamphlet, the Hawaii court, the Nebraska court, where they say in that appendix, it says don't stop someone simply because they won't come through the stop. Now why? Why is that in the appendix? It's because as the person drives up to the checkpoint, there is no suspicion of his driving conduct. He decides I'm not going to let you stop me without any suspicion. To say, you know, actually it's really a sad state of affairs to say that your refusal to confirm to the police that you're not violating the law becomes a reasonable suspicion that you're violating the law. That's a circular argument that everybody has to come through the checkpoint if you get anywhere close to it. And that turns the tide against the validity of the checkpoints. In criminal cases, don't we tell juries that you can use flight as a recognition of guilt? Sure. And there are cases that are in my opening brief that talk about the distinction between headlong flight, Illinois v. Wardlow, and just not obeying a request of an officer. And I'll get back to that earlier. No, we really have. I mean, we're done. Isn't this just, do you have a right to avoid a police officer if you want to? That's those cases. It's not flight to say, no thank you, I'll keep going if you don't mind, where an officer doesn't have a reason to stop you under Terry, but he wants you to stop. So he says, come over here. Even if it sounds like a command, if it's not a valid stop under Terry, you can walk away. And I cite the cases in my opening brief where courts have said, well, you know, not turning around and coming to the officer was suspicious and on appeal they're overturned because it's not suspicious to exercise your right to not be suspected without cause. And everybody who drives to a checkpoint is not legitimately suspected until they get into the checkpoint. So that's where the point becomes, in the guidelines, however it was created, without violating some traffic law, don't stop them. There's more courts that have said, that's going to be overturned if you stop them. So don't stop them without seeing a violation. And in this case, there wasn't even time to see a violation. He just came over the Mississippi River, and so they, boom, come right out and stop him. And there's no dispute in this case. Even the trial court's order says this stop was because he didn't come through the checkpoint. So there's no other grounds other than he refused to let them check whether or not he was in compliance with the law. So what do you make of the Scott case? Um, well, I don't like arguing for case law of this court to be overturned, but that's an older decision. And you don't have to overturn Scott because Scott was a case where they said you couldn't stop this guy, he lived on that street. But the dicta in that case says if you didn't have a street you lived on. Well, first of all, we can't overturn it if we cannot follow it and we can disagree with it. It's your decision. Well, it's a third district decision. I know, but we can't overturn another case from your own district. I don't think you need to because, in fact, Scott had his conviction reversed. And, you know, we quibble and race over whether or not the language is dicta or something, some other animal, where the court says, but if you don't go through a checkpoint and you don't have a street that you actually live on, like Scott did, that that's grounds for a stop. I think that's wrong. I think that doesn't adequately take into account the balance. That gives too much power to randomly check people out. And, in this case, Mr. Timpson was stopped because he refused to confirm that he was driving in compliance with the law, to confirm that he was not drunk, had a valid license, had insurance. Now, it's easy to pull out the old saying, well, if you don't have anything to hide, why won't you just let the authorities check you out? It's also an affront to liberty to pull that out. But can't your argument be made very validly about everybody that gets stopped in a roadblock, safety check, whatever spin you want to put on it? I mean, that argument could be made to everybody that's driving down the road and gets stopped at a roadblock. That would be a case that takes issue with the validity of the stop, whether or not they follow the guidelines. You're not even in a stop. Is Timpson in a stop at this point? No, Timpson gets stopped. Is he exercising his right to avoid it in encounter with a police officer? Yes, he is. Okay. I mean, we could have created a record in the trial court of whether or not this roadside checkpoint was compliant with all the heavy-duty rules and regulations because, again, it's a procedure that we barely tolerate under the Fourth Amendment. We didn't do that because this wasn't a stop within the checkpoint. It wasn't in the penumbra of the checkpoint like the Long case from 25 years ago. It was a case where the motorist said, No, thank you. I don't want to confirm that I'm okay. Would it make any difference at all if it was a roadblock put up, say, because of an ambulance? Somebody's just been kidnapped. Would that make any difference? And they were blocking and stopping every car and looking because somebody I think that might be that case that went to the Supreme Court. It was Post Edmonds versus Indianapolis. It was okay in the situation where there was a drunk-driving accident and they did a canvassing of a Lombard Illinois intersection to see if people knew anything. That wasn't based on suspicion, though. That's not saying we suspect every driver on this road of being the kidnapper. That's kind of ludicrous. There's only one kidnapper. They're trying to get information to solve the crime. You're not a suspect then. But with these roadside checkpoints, so it is quite different. A roadside checkpoint is about semi-suspecting everybody. And there's not a strong rationale for doing that. I understand there is a valid interest in curbing drunk-driving and safety of the roads. But I'm saying you have to balance that against the right of a person to not be indiscriminately suspected and to not play along. We just urge Your Honors to reverse the denial of the suppression order. Thank you, Mr. Corrales. Mr. Nicalosi? Good afternoon, Your Honors. May it please the Court. May it please the Council. I get to fall on my sword here for the first part of my argument. I wrote in my brief that the stop in this case was justified based on a violation of 11-706-82 crossing over the left center of the roadway. I failed to read subsection B, and I literally failed to read it. I was so pleased with what I found in subsection A. That's serious. I can't be any more true than that. I failed to read subsection B. I apologize for presenting that issue in the brief and embarrassed to Well, you're hardly the only person that's ever made that mistake. I understand. I understand. Thank you for your willingness to do that. I'm definitely willing to admit ineffective assistance of counsel every once in a while. Although it got me thinking, have I done this before? And I just never had to come to court to talk about it. I hope I haven't done it before. I'll try not to do it again, of course. Moving on to the meat of the issue, as Counselor previously discussed, the people submit that the defendant's action here at the U-turn at the railroad crossing does arise as sufficient and sufficient to stop. The facts, as Counselor discussed, are pretty simple and almost entirely undisputed. He was 50 feet away from a roadblock, a legal roadblock. He decided he didn't want to go through it. He did a U-turn at the railroad crossing. Those are the facts that we need. The people submit that the big issue here is whether or not these roadblocks are legal. And they are. And that was discussed at the outset of Counselor's argument, with your honors. The fact is that they're legal. And as long as they're legal, they have a purpose. Their purpose is for, in this case, it was, I believe this was a driver's license stop, but regardless of whether it's to check for a driver's license or to check for proper insurance or to check for drivers driving under the influence, the fact is, as long as they're legal, their purpose is completely frustrated if police officers cannot stop those attempting to evade, in a suspicious manner, these roadblocks. And in this case, there's no question, regardless of whether it's legal, and his maneuver here was legal, that U-turn, I don't think there's any debate that it's a suspicious activity. And the fact is, if police officers were not able to stop drivers from making such suspicious maneuvers in and around the roadblock to avoid this police contact, what's the point of the roadblock? Basically, I think to reverse the decision in this case would be basically to say that these roadblocks are largely pointless and that only the people, of course, the result is going to be that the only people who are going through these roadblocks are people who have nothing to hide. And the point of the roadblocks is to catch people who are not following the law. How far away from the roadblock, the constitutionally allowed roadblock, can you decide to go across the river? That's up to the discretion of the officers here. Discretion of the officers? Whatever they deem to be a suspicious maneuver, yes. Really?  For example, in Scott and Long, the facts were a little bit different, but in Long, maybe it's a little old, but it's still valid law. The defendant drove up to the near the roadblock. He was 100 feet away, twice as far as the driver in this case, and he pulled off to the side of the road. This court said that that's a suspicious activity, and they said, quote, a motorist may not avoid having his driver's license checked by attempting to evade a stationary checkpoint. That's dicta. That wasn't the holding in Long. Maybe it wasn't the holding in Long, but it certainly was. Well, I think the rationale of that quote and that case, well, it's still valid, and it was also spoken in Scott, a very similar language. Scott went even further to actually describe the circumstances when a stop of this type is justified. Despite the holding of Scott, Scott says a stop is justified where one, vehicle fails to stop at a roadblock, two, the vehicle stops just before the roadblock and the driver and the passenger switch, or number three, the vehicle avoids the roadblock in a suspicious manner. And Scott, the defendant, did not avoid the roadblock in a suspicious manner. He took a normal side street, which he actually lived on. That was a normal maneuver. The people are not here advocating for an expansion of Scott and Long and similar cases to stop drivers who were performing a normal maneuver, normal driving maneuvers. So it's not a normal maneuver to make a U-turn, that's a lawful U-turn, and turn direction. Not 50 feet from the roadblock. Counsel spends a lot of time talking about cases from other jurisdictions. In Indiana, the case of Snyder v. State, they said that not stopping such vehicles, performing such maneuvers would be, quote, ignoring reality, end quote, as the driver is likely committing a crime. These officers are human beings and they need to use their common sense and should be able to assess what a driver is doing with regards to whether it's legal or not. Again, I need to go back to basically my thesis of this, that these roadblocks are legal and they have zero purpose, zero point, if officers can't stop those driving suspiciously to avoid them. Is it the proximity to you that makes it suspicious that it's 50 feet? So is it that the roadblocks are legal and it's illegal to choose not to have contact? Both things are legal. So we have to look at what gives it its suspicion or what makes it okay. Is it the proximity? Well, certainly, proximity is certainly one element. But again, going back to the officers using their common sense to assess what is a suspicious maneuver, the fact is that distance from the roadblock may be the speed. If the U-turn was done hastily or something of that effect, these all need to be... How about make a car? What's that? Well, I don't think so. You do? In common sense, cars are associated with certain activity. Is that right? That's news to me. But again, I need to keep trying to pull your honors back to the fact that this is a legal roadblock. It happens every day on I-80. Yes. I-80 is a hotbed. No question about it. But the fact is this court has discussed maneuvers that are sufficiently suspicious to justify a stop. Again, parking 100 feet from the roadblock, that was deemed suspicious enough to stop. And that was, again, twice as far. We could deal with different distances another day. The facts of this case are we're talking 50 feet. The officers clearly felt this defendant had one final chance to turn around before avoiding the roadblock. He tried to do it. And again, if these roadblocks are legal, then their purpose is completely frustrated if police are not allowed to stop those attempting to avoid the roadblock or else all you're going to get is people who clearly have nothing to hide. People submit that the reasoning behind Long and the law discussed in Scott is still good law and that stops of this nature should be upheld assuming they're stopping a driver who is driving in a suspicious manner to avoid the roadblock. People submit that the trial judge's denying of the motion to suppress should be upheld. If there are any other questions, I'd be happy to answer. Thanks, Mr. Pelosi. I see you're on the edge of your seat and ready to get up here, Mr. Corrales. Let's go. I just want to address what I think the state's best argument is and that is that these checkpoints are going to be frustrated if you can't stop the people that it seems like they're designed to have to go through it. And what it makes me think of is how we're giving law enforcement the power to funnel the sheep, otherwise known as drivers, into these checkpoints because most of them, like sheep, are just going to grin and bear it and go through. But what if dozens and dozens of drivers not violating anything decide I'm not going to be a sheep today. I'm going to turn around and go the other direction. What if they gave over and nobody came? They're going to call attention same idea to themselves and they're going to exhaust the resources of the law enforcement community to the point where they're going to say these checkpoints don't work anymore. That frustrates the purpose but does the Constitution start with we the people? The people can do that and there's no reason that they have to submit to these stops. And if I could put it on a website and say look, test this system, make a change, then enough people could turn around and say come after me. I'm not doing anything but go ahead and come after me. Well, let me add, of course we got the Supreme Court, the United States Supreme Court that has said these things meet the reasonableness standard, right? And we can disagree with that but earlier in your argument you're talking about having the right to avoid the police and if a policeman is walking down the street and the cop goes, hey, come here I'd like to talk to you and you say no, thanks, that doesn't give him a basis to seize you. And of course that's right because the Supreme Court has never said that police can randomly seize people and temporarily detain people walking down the street. And so that kind of takes that scenario out of what we're talking about here. And this isn't about whether we like roadblocks or not, it's about whether this is within the ambit and we've got Scott and Long, both in this court, that seem to suggest that trying to avoid a roadblock is a basis for a stop. And they didn't consider the argument that I've made in those cases. What did you see the holding in Long? Long being the first case, that stopping and staying in a stationary position within 100 feet, and I use the word penumbra because I love that from the Roe versus Wade case, it's close enough for our purposes to being within the checkpoint. If you're that close, we can treat you as if you're in it. That's what I believe the narrowest reading of that case is. You've made it close enough to the beginning of this checkpoint. And that's all it says. Okay. Well, this fellow made it closer than that, didn't he? Yes. He made it within, what, 50 feet? But he had to be stopped. I point to Ludeman in my opening brief, which is very close to the situation in Long. He wasn't stopped. He stopped. He was stopped. That's a big distinction. This driver was stopped. If he would have not been stopped, he would have been back in Iowa within a minute or two. And the stop was based on we want to force you through this checkpoint. An interesting thing in that Scott case is the trial judge's decision, as I was reading it, and of course it was reversed because he was on the street that he lived on, so he was entitled to go down that side street. The court said, in the trial, we recognize that the officers can force people to go through checkpoints. I'm like, that's not the balance that they even agreed to in the roadside cases. If you agree to go into this checkpoint, the checkpoint is valid. But I don't know that there's a case, and that wasn't a published case because that was a trial court, saying the balance of things favors forcing people to go. So what, can we round people up and say there's a checkpoint, follow me like a funeral procession? That, you know, this is, if you go through the checkpoint, unless they conducted it wrong, it's a valid operation. But if you choose not to, my argument is it's the same as if you choose not to any other indiscriminate request to comply. Thank you. Thank you, Mr. Krause. Mr. Nicolosi, thank you both for your arguments here today. Interesting case. I'm sure it's going to engender a lot of good discussion back there. So, this case will be taken under advisement. A written disposition will be issued in due course. We'll be in recess for, a brief recess for a panel change for the next case. Thank you.